IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA
2008 JUN 30 AM 10: 42
LORETTA G. WHYTE
CLERK

| | |
|---|---|
| JOHNNY DUNCAN, ~~INDIVIDUALLY AND~~ ~~AS PRESIDENT OF AND ON BEHALF OF~~ ~~REGINALD ALLEN COTTON RECREATION~~ ~~(RAC)~~ | CIVIL ACTION NO. <br> **08-3840** <br> SECTION **SECT. N MAG. 5** |
| VERSUS | |
| TANGIPAHOA PARISH COUNCIL IN ITS OFFICIAL CAPACITY, COUNCILMAN MICHAEL PETITO IN INDIVIDUAL AND OFFICIAL CAPACITY, AMITE AREA RECREATION DISTRICT #3 BOARD OF DIRECTORS IN ITS OFFICIAL CAPACITY, DISTRICT #3 BOARD MEMBERS, ROBERT HARRELL, ROBERT LANDREWS, ROY LEE WARFORD, INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITIES, & THEIR AGENTS RICKY WHIGHAM, AND JERROL JONES IN THEIR INDIVIDUAL CAPACITIES, LITTLE LEAGUE BASEBALL, INC., *ET ALIA* | JUDGE: _____ <br><br> JURY TRIAL DEMANDED |

---

### *COMPLAINT*

---

**NOW INTO COURT** comes *in proper person* plaintiff, Johnny Duncan to seek

redress and relief from the above-named defendants for a continuing series of acts and/or

omissions from July 18, 2007 through the present where defendants maliciously libeled,

slandered, conspired to "libel and slander", conspired to invade the privacy and did invade

the privacy of Plaintiff Johnny Duncan through the utterance, printing and dissimilation to

Fee $350
✓ Process
X Dktd
___ CtRmDep
___ Doc. No.

the public of words and documents containing information that the defendants knew or should have known were untrue and/or were not of a public nature. All such prescribed acts were contrived and construed to invade the privacy of plaintiff and to malign, impugn, defame and scandalize the character, good name and reputation of Plaintiff Johnny Duncan in order to sabotage and hinder the operation of the Reginald Allen Cotton (RAC) Dixie Baseball Franchise over which he was elected president. The acts of each defendant individually, jointly and severally, *without due process of law*, did deprive Plaintiff individually ~~and as President of the Reginald Allen Cotton (RAC) Recreation~~ of a property interest in his good name and reputation that he had accrued over a lifetime, all in violation of the Americans with Disabilities Act, the Fifth Amendment, the Ninth Amendment and the Fourteenth Amendment to the United States Constitution, §§§§1981, 1983, 1985, 1986, the Civil Rights Act of 1866 and pendant Louisiana State statutes, all under the *color of law,* to wit:

### *Jurisdiction and Venue*

1.

Jurisdiction is vested in this Court by 28 U. S. C. Sections 1331 and/or 1343(3) and (4). The matter in controversy exceeds one hundred thousand dollars ($100,000.00). Further, plaintiff seeks to invoke the provisions of the Civil Rights Act of 1866 and 42 U. S. C. A. §1988 for attorney Fees, if and when applicable, and any and all other provisions of the United States Constitution, federal and state statutory laws, general common and

equity laws as applicable to the circumstances and violations hereinafter mentioned and disclosed during these proceedings.

2.

Venue in the United States District Court, Eastern District of Louisiana is proper, pursuant 28 U. S. C. §1391.

***PARTIES***

3.

***Plaintiffs***

Plaintiff, Johnny L. Duncan is an *African American* citizen of the United States, residing in the state of Louisiana, in the Parish of Tangipahoa, in the City of Amite at the address of 309 South Third Street, who at all times relevant served as President of Reginald Allen Cotton Recreation (RAC) Program–Dixie Youth Franchise # Y-2359; Dixie Boys Franchise # B-073; and Dixie Majors Franchise # -2486. Plaintiff is also an ordained minister of the Progressive Universal Life Church, a humanitarian, an author, NAACP life member, American History instructor for Baton Rouge Community College, and a veteran with more than twenty (20) years of service in the United States Army, both on active duty and reserve as a non-commissioned officer and commissioned officer. As a platoon leader, executive officer and company commander, plaintiff's character and integrity had to be *"impeccable and beyond reproach!"*. (See Exhibit #1)

4.

That the Reginald Allen Cotton (RAC) Recreation/League is a recreation program operating as a not for profit entity that was organized to serve as a vehicle to provide recreation activities for African American youth. RAC is franchised member of Dixie Youth, Dixie Boys, Dixie Majors, and Dixie Softball. Named after longtime educator and coach Reginald Allen Cotton, for almost twenty (20) years RAC has been the vehicle for African American youth to participate in America's past time in and around Amite, Louisiana. During the relevant period, Plaintiff Johnny Duncan served as the duly elected President of RAC;

## ***Defendants***

5.

Tangipahoa Parish Council is a political entity organized under the laws of the State of Louisiana, that can sue and is capable of being sued. Said Council approved the appointment of the members of the Amite Area Recreation District #3 Board, and was at all times relevant responsible for the supervision and conduct of the Board and its activities, including the establishment of board policies and guidelines, setting the geographical boundaries, allocation and accounting of finances, and etcetera. At all times pertinent, Defendant Tangipahoa Parish Council sanctioned and condoned the action of Amite Area Recreation District #3 Board and its members by its *acts and/or omissions*. The Tangipahoa Parish Council's failure to provide Board members and their agents with training and supervision as to their responsibilities resulted in the defamation and invasion of the privacy

of Plaintiff Johnny Duncan individually and as President of RAC.

6.

Defendant Tangipahoa Parish Council consist of the following members: Tom Tolar, District 1; Tennis Rick, District 2; Mike Petitto, District 3; Carlos S. Bruno, District 4; H. G. "Buddy" Ridgel, District 5; Ronnie Bankston, District 6, Lionell Wells, District 7, Carlos Notariano, District 8, Debbie Edwards, District 9, Bobby Cortez, District 10, and Gordon Burgess, Parish President, who are sued in their individual and official capacities as Council members who approved the appointment and actions of the members of the Amite Area Recreation District #3 Board and their agents;

7.

Amite Area Recreation District #3 Board of Directors is a subdivision of the Tangipahoa Parish Council, whose members were selected and appointed by Tangipahoa Parish Councilman for District #3 Michael Petitto, and whose appointments were approved by the Tangipahoa Parish Council and the members of the Tangipahoa Parish Council. At all times relevant, Amite Area Recreation District #3 Board of Directors acted as an agent of and under the authority of the Tangipahoa Parish Council and its members under the *color of law*.

8.

Tangipahoa Parish Councilman Mike Petitto, at all times relevant, was/is a Caucasian member of the Tangipahoa Parish Council for District #3 who is being sued in individual

capacity and in official capacity as a member of the Tangipahoa Parish Council who selected the members of Amite Area Recreation District #3 Board and recommended them to Defendant Council for approval and appointment. At all times relevant Councilman Petitto acted in both an individual and official capacity as an agent of and member of the Tangipahoa Parish Council;

9.

Amite Area Recreation District #3 Board Member Robert Harrell was selected and appointed to Amite Area Recreation District #3 Board of Directors by District #3 Councilman Mike Petitto and approved by a vote of Tangipahoa Parish Council. Mr. Harrell's term expires in May, 2011. At all times relevant Board Member Harrell acted both individually and in an official capacity as an agent of Defendant Tangipahoa Parish Council;

10.

Amite Area Recreation District #3 Board Member Robert Landrews was selected and appointed to Amite Area Recreation District #3 Board of Directors by District #3 Councilman Mike Petitto and approved by a vote of the Tangipahoa Parish Council. Mr. Landrews' term expires in May, 2011. At all times relevant Board Member Landrews acted both individually and in an official capacity as an agent of Defendant Tangipahoa Parish Council;

11.

Amite Area Recreation District #3 Board Member Robert Roy Lee Warford was

selected and appointed to Amite Area Recreation District #3 Board of Directors by District #3 Councilman Mike Petitto and approved by a vote of the Tangipahoa Parish Council. Mr. Warford's term expired in May, 2007 and he was appointed to another four (4) year term to expire in May, 2012. At all times relevant Board Member Warford acted both individually and in an official capacity as an agent of Defendant Tangipahoa Parish Council;

12.

Amite Area Recreation District #3 Board Member Rodney Mobley was selected and appointed to Amite Area Recreation District #3 Board of Directors by District #3 Councilman Mike Petitto and approved by a vote of the Tangipahoa Parish Council. Mr. Mobley's term expires in May, 2011. At all times relevant Board Member Mobley acted in an official capacity as an agent of Defendant Tangipahoa Parish Council;

13.

Amite Area Recreation District #3 Board Member Ms Eve Wilson was selected and appointed to Amite Area Recreation District #3 Board of Directors by District #3 Councilman Mike Petitto and approved by a vote of the Tangipahoa Parish Council. Ms Wilson's term expires in May, 2011. At all times relevant Board Member Wilson acted in official capacity as an agent of Defendant Tangipahoa Parish Council;

14.

Ricky Whigham at all times relevant was a designated agent of and acted at the behest of Amite Area Recreation District #3 Board of Directors and fellow co-defendant members

Robert Harrell, Robert Landrews and Roy Lee Warford and as an agent of Defendant Tangipahoa Parish Council;

15.

Jerrol Jones at all times relevant was a designated agent of and acted on behalf Amite Amite Area Recreation District #3 Board of Directors and defendant members Robert Harrell, Robert Landrews and Roy Lee Warford, and as an agent of Defendant Tangipahoa Parish Council;

16.

That Little League Baseball, Inc. is a person within the meaning of the law. Little League Baseball, Inc. did conspire with and enter into agreement and/or contractual relations with the other co-defendants Amite Area Recreation District #3 Board, and Board members Harrell, Landrews and Warford, directly and indirectly through their agents co-defendants Ricky Whigham and Jerrol Jones, to benefit from the prescribed and conspiratorial acts of defamation and invasion of privacy against plaintiff Johnny L. Duncan individually and as President of the Reginald Allen Cotton (RAC) League, whereby it recruited and enrolled RAC players, participants and sponsors– who were dissuaded from continuing their relationships with RAC because of the defamation and invasion of privacy of plaintiff–to support its newly created baseball franchise in Amite. Defendant Little League, Inc. consummated its role in the conspiracy by recognizing and issuing a franchise to fellow co-conspirators. Defendant Little League, Inc. consorted with co-defendants Roy Lee Warford,

Ricky Whigham, Robert Harrell, Robert Landrews by allowing them to use RAC players in competition prior to and during the relevant period in violation of the RAC Constitution and Dixie Baseball regulations.

17.

Other unnamed parties and/or entities who are unknown at the present but who will become known as discovery progresses will be added as defendants their names and roles in this litigation become more succinct;

***Background***

18.

That at all times relevant defendants Robert Harrell, Robert Landrews, and Roy Lee Warford acted in their capacity as members of the Amite Area Recreation District #3, under the color of state law and as agents of the Tangipahoa Parish Council and/or its representatives or employees.

19.

That at all times relevant Defendants Jerrol Jones and Ricky Whigham acted at the behest of and on the behalf of members of Amite Area Recreation District #3 Board and its members as agents of Defendant Tangipahoa Parish Council.

20.

Upon information and belief that will be corroborated upon completion of discovery, defendant Amite Recreational District #3 is located in political District #3 of Tangipahoa

9

Parish, which is comprised of about 60% African American and 40% Caucasian voters;

21.

Upon information and belief, that will be confirmed with the completion of discovery, the Board of Directors for Amite Area Recreation District #3 consist of all African American members, who were appointed by defendant Councilman Mike Petitto to gain leverage and *"political kick back"* to ensure his re-election to the Tangipahoa Parish Council as representative for a majority black district in 2007;

22.

Upon information and belief that will be corroborated upon completion of discovery, Defendants Councilman Mike Petitto and Tangipahoa Parish Council did knowingly and purposely approve the appointment of an all African American member Amite Area Recreation District #3 Board in order to conceal the presence and operation of its illegal discriminatory animus that sanctioned and condoned segregation and the discriminatory use and allocation of Tangipahoa Parish Council recreation funds for baseball and other recreational activities in Amite in which African Americans were involved;

23.

That defendant Tangipahoa Parish Council delegates to each District Council person the authority to select and make appointments to the Area Recreation Districts with the approval of the Council;

24.

That each Council member for his/her respective district help secure funding for the activities of its indigenous recreation district, the grants taxes etcetera;

25.

That on July 19, 2006, Plaintiff was elected president of the Reginald Allen Cotton (RAC) Recreation Program;

26.

That on April 19, 2007, Plaintiff was instrumental in securing the passage of the RAC Constitution and Bylaws to govern the organization;

27.

That Defendants Robert Landrews, Roy Warford, Robert Harrell and Ricky Whigham voted against the passage of the RAC Constitution and Bylaws;

28.

That on May 5, 2007, Defendants Robert Landrews and Roy Warford were disqualified from coaching pursuant Article II, Section 3(g)(1) of the RAC Constitution and Bylaws;

29.

That the defendants as a group voted against the passage of Amendment #1 to the RAC Constitution and Bylaws on June 19, 2007;

30.

That Defendant Ricky Whigham was sanctioned IAW the RAC Constitution and Bylaws for providing false information on the RAC Background Check questionnaire;

31.

That the defendants voted against the passage of Amendment #2 to the RAC Constitution and Bylaws on July 18, 2007;

### *First Cause of Action*

32.

Upon information and belief, the defendants individually and/or jointly and severally did meet together on at least one occasion between the dates of April 18, 2007 and July 19, 2007, to present and discuss among each other information and allegations against plaintiff Johnny Duncan that appeared in the document which they distributed to the public on or about July 18, 2007;

33.

Upon at least one occasion, defendants did discuss and foment an intentional and malicious scheme to present the defamatory information to the public in verbal and written form;

34.

Upon information and belief, each co-conspirator did participate in the discussion and did contribute information that they knew to be untrue for the compilation of a document

which contained false statements  (see Exhibit #2) to be disseminated to the public in written form and verbally in an attempt to discredit plaintiff as President of the Reginald Allen Cotton (RAC) Recreation Program  and to assassinate the character and reputation of the plaintiff before the general public in order to persuade parents to allow their children to participate in  Little League Baseball,  Inc.,  an Amite franchised created by defendant Recreation District #3 Board members and their agents;

35.

Upon information and belief,  on or about 6:00 P. M. on the evening of July 18, 2007 and earlier, defendants did present their conspiratorial and defamatory document to the persons in attendance of a meeting of the Reginald Allen Cotton (RAC) Recreation Program at Butler's Park in Amite, Louisiana;

36.

That Defendants, with Robert Landrews acting as spokesman, did in a bellicose, vicious,  malicious manner assail Plaintiff with a barrage of verbal and printed allegations, claims, inferences and innuendos that were contained in Exhibit #2, claims that all the co-conspirators knew or should have known were false and untrue on their face;

37.

Exemplary of defendant's misrepresentations is the appearance on page two (2), lines 2-3 of Exhibit #2 where it is insinuated that plaintiff instead of the player's Mother signed for a  RAC player to play "illegally" for Independence;

38.

LaSabra Cyprian Harvey's Affidavit corroborates the untruthful nature of defendants' claims (see Exhibit #3)

39.

That defendants with malice did publish and disseminate hundred of copies of Exhibit #2 to the public to inflame and poison public opinion against plaintiff as an individual and as President of RAC;

40.

That at the time of this meeting the teams participating in RAC were Trabona's IGA (4-6 years of age), Alma's (7/8 years of age), Richardson's (9/10), Duncan's Stars ( Blue-11/12), Goldsby (11/12), One Reason (13/14), George Tucker's Kings (13/14), Rams (13/14), George Tucker's Queens (women softball), Grand Prix Car Wash (15-18), and Duncan's Stars (Red-softball).

41.

That at the end of the meeting defendant Roy Lee Warford boasted to plaintiff that he would take all of RAC'S players in 2008;

42.

That the same day that defendants read the document (Exhibit #2) at the meeting, on the way home people stopped plaintiff and asked: *"Why are they saying all those things about you?"*;

43.

That from July 18, 2007 through the present, former players like the sons of Wayne Johnson and other parents have made comments about plaintiff stealing money, mimicking the venomous contents of Exhibit #2 with regards to missing funds;

44.

That defendant Robert Harrell did not renew his membership in RAC after it expired at the end of July, 2007;

45.

That defendant Roy Lee Warford did not renew his membership in RAC after it expired at the end of July, 2007;

46.

That defendant Robert Landrews did not renew his membership in RAC after it expired at the end of July, 2007;

47.

That defendant Jerrol Jones did not renew his membership in RAC after it expired at the end of July, 2007;

48.

That defendant Ricky Whigham did not renew his membership in RAC after it expired at the end of July, 2007;

### *Second Cause of Action*

49.

That beginning with the publication of Exhibit #2 and continuing through the present, defendants with malice engaged in a continual campaign to smear the character, name and reputation of plaintiff in an effort calculated to humiliate him and convince the parents to join that then and not participate in the program over which plaintiff was president;

50.

Upon information and belief, that will be corroborated upon the completion of discovery, between August 2007 and the present, –Defendants Jerrol Jones, Ricky Whigham, Roy Lee Warford and co-defendants with malice did tell players and their parents not to register and participate in RAC because Plaintiff Johnny Duncan used illegal drugs;

51.

Upon information and belief that will be corroborated upon the completion of discovery, between August 2007 and the present,– Defendant Jerrol Jones, Robert Landrews, Roy Lee Warford and co-defendants with malice did tell players and their parents not to register their children with RAC because Plaintiff Johnny Duncan did sell illegal drugs;

### *Third Cause of Action*

52.

Upon information and belief that will be corroborated upon the completion of discovery, between August 2007 and the present, to prevent parents from allowing their

children to participate in RAC– Defendants Robert Landrews, Roy Lee Warford and co-defendants with malice did tell James Bryant, Sheila Addison, Wanda McCoy, players, parents and others not to participate in RAC because Plaintiff Johnny Duncan embezzled RAC funds and used them for personal gain (See Exhibit #2, page 3);

### *Fourth Cause of Action*

#### 53.

Upon information and belief that will be corroborated upon the completion of discovery, between August 2007 and the present, to prevent parents from allowing their children to participate in RAC– Defendant Jerrol Jones and co-defendant board members with malice did invade the privacy of Johnny Duncan by telling players and their parents not to play for RAC because its president was HIV positive;

#### 54.

Upon information and belief that will be corroborated upon the completion of discovery, between August 2007 and the present, to prevent parents from allowing their children to participate in RAC– Defendant Jerrol Jones and co-defendant board members with malice did invade the privacy of plaintiff by telling players and their parents not to play for RAC because *Johnny Duncan had A. I. D. S.!*

#### 55.

Upon information and belief, knowing the ignorance and stigma associated with the said confidential medical conditions, defendants with malice did conspire to disseminate and

did disseminate privileged medical information for the purposes of humiliating plaintiff and to lure players and participants away from RAC and into their Little League Baseball, Inc. franchise.

### *Fifth Cause of Action*

56.

Upon information and belief which will be corroborated upon the completion of discovery, the Reginald Allen Cotton (RAC) program existed in Amite prior to the creation and issuance of Defendant Little League, Inc. franchise to other co-defendants in 2008;

57.

Upon information and belief which will be corroborated upon the completion of discovery, many of Defendant Little League, Inc.'s players participated in RAC prior to the creation and issuance of Defendant Little League, Inc. franchise to other co-defendants in 2008;

58.

Upon information and belief which will be corroborated upon the completion of discovery, Defendant Little League, Inc. did use the defamation of character of plaintiff as a weapon to lure players away from RAC and into their new franchise in Amite;

59.

Upon information and belief which will be corroborated upon the completion of discovery, Defendant Little League, Inc. did use the invasion of privacy of plaintiff as a tool

to lure players away from RAC and Dixie Baseball franchises into its new franchise in Amite;

60.

Upon information and belief, oblivious to the truth and actual facts, Defendant Robert Landrews and other co-defendants in May, 2008 did tell James Bryant and others that Plaintiff Johnny Duncan stole their players;

***Sixth Cause of Action***

61.

From January 2008 through the present, to consummate its conspiracy to defame and invade the privacy of Plaintiff, Co-conspirators Roy Lee Warford, Ricky Whigham, Jerrol Jones, Robert Landrews, and Robert Harrell with malice did tell Calvin Batiste, the Amite Parks and Recreation Director, that because of their acts Plaintiff Johnny Duncan could not get any children to play on his teams;

62.

From January 2008 through the present, to consummate its conspiracy to defame and invade the privacy of Plaintiff, Co-conspirators Ricky Whigham, Roy Lee Warford, Jerrol Jones, Robert Landrews, and Robert Harrell with malice did tell Calvin Batiste that because of their acts Plaintiff Johnny Duncan could not get any parents to support RAC;

63.

From January 2008 through the present, to consummate its conspiracy to defame and

19

invade the privacy of Plaintiff, Co-conspirators Roy Lee Warford, Ricky Whigham, Jerrol Jones, Robert Landrews, and Robert Harrell with malice did tell Calvin Batiste that because of their acts Plaintiff Johnny Duncan didn't need the Butler Town ballpark because RAC didn't have any teams to play in it, when in fact RAC Trabona's IGA, Grand Prix Car Wash and Alma's Restaurant played games there;

64.

Upon information and belief, that will be corroborated upon completion of discovery, Defendants Roy Lee Warford, Robert Landrews and Robert Harrell in their official capacity as members of Amite Area Recreation District #3 Board of Directors did tell and did instruct fellow co-conspirators Ricky Whigham and Jerrol Jones to tell Dixie officials Larry Cardoranella, Gilly Berthelot, Dess Fontenot, and administrators of other Dixie Youth franchises that RAC did not have any teams which prevented other Dixie franchises from scheduling games with RAC for the 2008 season;

65.

Upon information and belief that will be confirmed upon completion of discovery, Defendant Amite Area Recreation District Board members instructed their agent co-conspirator Ricky Whigham to contact Dixie Boys State Director Dr. Allen and District Director Don Baudoin and schedule a meeting with them to schedule games because RAC'S 13/14 players had left RAC and now played for them.

### *Seventh Cause of Action*

66.

Upon information and belief that will be verified upon completion of discovery, Defendant Amite Area Recreation District #3's Board Member Roy Lee Warford, in collusion with the other co-conspirators, with malice did slander Plaintiff by telling RAC participants that they shouldn't play for RAC because Johnny Duncan had been arrested by the Hammond Police Department for stealing;

67.

Upon information and belief that will be verified upon completion of discovery, Defendant Amite Area Recreation District #3's Board Member Roy Lee Warford, in collusion with the other co-conspirators, with malice did slander Plaintiff by saying to Montrel Walker and other parents that they shouldn't allow their children to play for RAC because Johnny Duncan had been arrested by the Hammond Police Department for stealing;

68.

Upon information and belief that will be verified upon completion of discovery, Defendant Amite Area Recreation District #3's Board Member Robert Harrell and other co-defendants–upon discovering the identity of persons who played for Grand Prix Car Wash, RAC'S 15-19 year old team– used their venomous tongues to slander plaintiff and force players to miss all games subsequent to their conversations ;

69.

That on Wednesday June 11, 2008, when Plaintiff Johnny Duncan went to North Park to resolve a playing field conflict, Defendant Amite Area Recreation District Board member, Roy Lee Warford and co-conspirators instructed players and fans to shout *"call the Hammond Police"*, indicative of them having knowledge of and the demoralizing impact of their slanderous allegation that Plaintiff Johnny Duncan had been arrested by the Hammond Police Department for stealing;

### *Pendant State Law Claims*

70.

Plaintiff hereby re-allege and adopts by reference Paragraphs three (1) through sixty-nine (69) as though fully set forth in this section;

71.

The malicious acts, omissions and conduct of the defendants constitute state torts (criminal offenses) and causes of action, including but not limited to libel, slander, conspiracy to commit libel, conspiracy to commit slander, invasion of privacy, and conspiracy to invade the privacy of Plaintiff Johnny Duncan as an individual and as President of RAC, pursuant to the civil equivalent of LA R. S. 14:47 and LA R. S. 14:48;

72.

This Court has pendant/supplemental jurisdiction to hear and adjudicate said State Law claims;

73.

Plaintiff individually and as President of RAC asserts the doctrine of *respondeat superior* and/or *vicarious liability* to Parish President Gordon Burgess and members of the Tangipahoa Parish Council with respect to all claims against Ricky Whigham and Jerrol Jones, both federal and state, *under the color of law*;

## ***Injuries***

Plaintiff Rev. Dr. Johnny L. Duncan has spent the better portion of his life building up his character, name and reputation. As a commissioned officer in the United States Army, he was accountable for his actions as well as for *"all that his subordinates did or failed to do"*. Through the years Plaintiff created a property interest in his name and reputation, an interest which was and is especially valuable in light of the fact that as a writer, his image in the public determines his livelihood and welfare. The name, character and reputation of Plaintiff also effected his employment as an instructor of history at Baton Rouge Community College during the relevant period. Students and faculty members from the area attend community college, and it is his belief that exposure to remarks by defendants was a mitigating factor in influencing the BRCC not to hire plaintiff for the full time History position that became available in August 2007. With the reckless disregard for the veracity of their allegations against Plaintiff Johnny Duncan and the manner in which they spread their lies, defendants' conduct surpasses the egregious! Considering the anxiety, duress, mental anguish. torment, public humiliation, stress, assay results and other intangibles– the

toll of defendant's defamation and invasion of privacy can never be adequately gauged. It is doubtful that plaintiff will ever be made whole from the agony that defendants have caused him by smearing his reputation and dragging his name and very being through the gutter.

*When one suffers from a debilitating, incurable and terminal sickness, living from day to day in the isolation, trying to ignore and forget the ravages and hardships of one's plight, is enough of an ordeal without having those perimeters extended by the constant reminder and ridicule of one's <u>disability</u> because of Defendants' invasion of privacy.*

The U. S. Government employs the Americans with Disabilities Act (ADA)(P. L. 101-336) to prevent discrimination based on a disability. *The Acquired Immune Deficiency Syndrome is a condition/illness covered by and is actionable under the ADA.* The Americans with Disabilities Act, Section 2(a)(7) emphatically admonishes:

> *"(7) individuals with disabilities are a discreet and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and relegated to a position of powerlessness in our society, based on characteristics that are beyond the control of such individuals and and resulting from stereotypic assumptions not truly indicative of the individual ability of such individuals to participate in, and contribute to, society;"*

The ADA covers the workplace, and the acts and/or omissions of local government entities such as Defendant Tangipahoa Parish Council/Tangipahoa Parish Government and its employees, agents and representatives.

The rampageous and insensitive acts of the defendants since July 18, 2007 impeded Plaintiff Johnny Duncan's ability to walk down the streets in Amite, Roseland,

24

Independence, Kentwood or attend any baseball meetings or other public gathering without being gawked at like he was a Biblical leper. Their acts cost Plaintiff economic loss in the form of revenue from daily work activities such as writing, research, carpentry, lawn care, book sales, *etcetera*. The acts and/or omissions of the defendants have ostracized Plaintiff and transformed *"a true African American hero and citizen"* (Exhibit #1, 6th paragraph) into a villain. How can the damage caused by defendants' defamation of and invasion of plaintiff's privacy be eradicated? A favorable judgment by this Court can begin the healing process. As a loyal and patriotic disabled American veteran, with twenty plus years of military service in the United States Army, the Constitution entitles Plaintiff to the right to be free of the alleged discriminatory treatment under Louisiana State and Federal law.

Furthermore, defendants' voracious passion for libeling and slandering Plaintiff Johnny Duncan both individually and as President of Reginald Allen Cotton Recreation has inundated the ranks of the organization. Defendants' libel of Plaintiff has reduced the membership in RAC to one-twentieth of what it was prior to the initiation of their vicious smear campaign. The accompanying slander and invasion of privacy against Plaintiff has reduced the number of players and teams in RAC by three-fourths. Before the defendants began their crusade in the 2007 season, under the leadership of Plaintiff Johnny Duncan, RAC had more competing age-division teams than it had ever had in its history. Plaintiff recruited and reorganized the T-Ball and 7/8 years old teams that hadn't played in ten (10) years. Additionally, plaintiff secured a franchise for the 15/16 and 15-19 teams.

Ever since there was a RAC, the organization has fielded at least one (1) Dixie All Star Team. In 2007 RAC sent three (3) teams to the Dixie All Star competition. The teams were for the 9/10, 11/12 and 13/14. Defendants' defamation and invasion of privacy of Plaintiff prevented RAC from entering a single team in Dixie Youth, Dixie Boys and Dixie Majors' post season games for the first time in its history. It will take a long time, if ever, to reverse the tolls that Defendants' acts have taken on Plaintiff Johnny Duncan and the organization over which Defendants Roy Lee Warford, Robert Harrell, Robert Landrews, Ricky Whigham and Jerrol Jones voted for him to become president.

## *Prayer for Relief*

For the *per se* libel and slander of plaintiff and mental anguish caused him by the public circulation of the malicious libelous and slanderous statements and privileged medical information, Plaintiff, Johnny Duncan, in an individual capacity ~~and as President of RAC,~~ prays that this Great Court finds all the defendants liable, and that plaintiff be granted relief pursuant §§§§§1981, 1983, 1985, 1986 1988, Civil Right Act of 1866, and Articles 2315 and/or 2317 of the La Civil Code, the Americans with Disabilities Act (ADA), and any and all other applicable state and federal laws in the form of a judgment in the amount of $10,000,000.00 against each defendant individually and in his and/or her official capacity, *for the total sum certain of $99,999,999.00* for invasion of the privacy of plaintiff by disseminating privileged medical information to the public and for the *reproach* brought upon plaintiff's good name, reputation, and character ~~individually and as President of RAC~~

by their malicious defamation (libel and slander).

Furthermore, plaintiff beseeches this Great Court to:

1.  Enjoin Defendant Tangipahoa Parish Council and its subordinate Area Recreation Districts from recruiting and spending Area Recreation District funds on individuals and activities outside the respective Recreation District;

2.  Establish procedures, guidelines and checklists that will preclude Area Recreation District Board members from acting in the prescribed manner outlined within this action;

3.  Install checks and balances to insure that the Area Recreation District operate within its geographical territory;

4.  Use the demographic make-up of a political district to determine the make-up of each Area Recreation District Board;

5.  Implement an accountability procedure which would prevent Area Recreation Board members from holding elective offices in organizations that create a conflict of interest with their board membership;

6.  Provide the like allocation of Tangipahoa Parish Council governmental resources (finances, land for parks and expertise) to all Area Recreation Districts;

7.  Order the Tangipahoa Parish Council to establish a procedure to monitor the expenditure of all funds and the activities of the Amite Area Recreation

District #3 Board and all such boards;

8. Enjoin Defendant Little League Baseball, Inc from the future use in its baseball program any and all individuals who previously participated in RAC and Dixie Youth, Boys, Majors, and Girl's Softball prior to 2008;

9. Instruct Defendant Tangipahoa Parish Council to develop a procedure to train and supervise its members of the Amite Area Recreation District #3 Board and all the recreational boards to preclude a recurrence of these events;

10. Have the Tangipahoa Parish Council to implement a fair and unbiased method to screen and select members to serve on the Area Recreation District Boards that is not tainted by political favoritism and corruption.

11. Mandate that Defendant Tangipahoa Parish Council draft and enforce the bylaw by which its recreation boards operate;

12. Order Defendant Tangipahoa Parish Council to dismantle the current Amite Area Recreation District #3 Board of Directors and replace them with members who at least meet some of the criteria outlined herein.

13. Permanently bar individual defendants from coaching, managing, administrating and otherwise being involved in any athletic and/or recreational activities and/or programs in which persons with disabilities under the ADA are allowed to participate.

14. Insure that Defendant Tangipahoa Parish Council institute mandatory quarterly

training on HIV/A.I.D.S. and ADA discrimination.

## *Conclusion*

The name, character and reputation of an organization are inextricably interwoven with those of its president, such as that of Defendant Tangipahoa Parish Council President Gordon Burgess. The facts in this case are not convoluted. The acts and/or omissions of the defendants are perfectly clear. Exhibits Numbers one (1) through four (4) evidence as much. In their haste to scandalize and destroy Plaintiff's good name and reputation–Defendant members of the Amite Area Recreation Board #3 left a long and telling trail to confirm their culpability in the case at bar. Defendant Tangipahoa Parish Council had an obligation to subject nominees to the Amite Area Recreation District #3 Board to the same screening as its other employees and agents (See Exhibit #4). Once confirmed as members of a sub-division of the Tangipahoa Parish Government, Defendant Parish Council had the same obligations for and responsibility for the Board as it does for any and all other employees and agents of the Tangipahoa Parish Government!

Ignorant and oblivious to their obligations and responsibilities under Louisiana Law as a subdivision of the Tangipahoa Parish Council, the egregious behavior of District Three Board members attracted the other like a magnet. An irreparable bond developed between them. The defamation of character and invasion of privacy of plaintiff's, both individually and as president of RAC, was the adhesive that held their illegal scheme together. With regard to the invasion of privacy, the acts and/or omissions of the defendants are both

29

mitigating and determining factors for this litigation, through which their indiscretions have transformed private, privileged and confidential medical information into a judicial debate and a public forum.

The *prima facie* nature of this case has already established the liability of defendants to Plaintiff. The lone task remaining before this Court is that of damages. Section 2(a)(9) is straight forward:

> *"(9) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity."*

Because of the egregious and insensitive nature of defendants' violations, Plaintiff Johnny Duncan prays that this August Body grant the damages requested by Plaintiff and any other supplemental amounts which in the eyes of the Court would make Plaintiff whole, both individually and as President of Reginald Allen Cotton (RAC) Recreation. Requested damages must include punitive awards to prevent defendants from engaging in like behavior in the future.

**WHEREFORE,** for all the above and foregoing reasons, humble plaintiff prays and beseeches the August Court, after all proceedings be had, issue an order finding the defendants liable to plaintiff for defamation of character and invasion of privacy for the requested amount, as a matter of law.

Done this the 30th day of June, 2008 at New Orleans, Louisiana.


RESPECTFULLY SUBMITTED BY:

Johnny L. Duncan
Plaintiff, *In Proper Person*
Post Office Box 723
309 South Third Street
Amite, Louisiana 70422
(985) 748-4956